UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SUSAN WELCHLY and ASHLEY SUMMERS, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:13-00440 Judge Sharp |
| FIRST BANK, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

This is a putative class action under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., which seeks injunctive relief to ensure that blind or visually impaired individuals are guaranteed independent access to automatic teller machines (ATMs) operated by Defendant FirstBank. Specifically, Plaintiffs Susan Welchly and Ashley Summers, both of whom are legally blind, allege that some of FirstBank's ATMs do not comply with the ADA and its implementing regulations (known as the 2010 Standards for Accessible Design (the "2010 Standards")) because some machines lack operational voice-guidance features, Braille placards, and/or correct tactilely discernable function controls.

FirstBank has filed a Motion to Dismiss (Docket No. 15) and a Motion for Summary Judgment (Docket No. 38), and those motions have been fully briefed by the parties. Common to both Motions is Defendant's contention that this Court lacks subject matter jurisdiction because there exists no case or controversy as required by Article III. Having fully reviewed the record and the arguments of the parties, Defendant's Motions will be granted for the reasons that follow.

1

## I. FACTUAL BACKGROUND

FirstBank provides a wide range of financial services through its 45 branch offices located across Tennessee. Included among those services is the availability of some 55 ATMs, two of which are alleged to have been visited by Plaintiffs.

According to the Complaint, Ms. Welchly visited FirstBank's ATM located at 2202 Fairview Boulevard in Fairview on March 15, 2012, and found that it had no voice-guidance feature as required by the 2010 Standards. Ms. Summers claims that at some point after March 15, 2012, she visited FirstBank's ATM located at 885 Conference Drive in Goodlettsville, and found that it, too, did not have an operational voice-guidance system and also had no tactilely discernible function controls as also required by the 2010 Standards. The Complaint also conclusorily asserts that "[b]ased upon an investigation performed on Plaintiffs' behalf, Plaintiffs have actual notice that additional ATMs in Defendant's ATM network are similarly in violation of . . . the 2010 Standards," and that some of Defendant's ATMs "suffer from myriad additional violations" of those standards. (Docket No. 1 Complaint ¶¶ 40 & 51).

After FirstBank moved to dismiss for lack of subject-matter jurisdiction because it allegedly remedied any ADA violations at the two ATMs Plaintiffs tried to utilize, Plaintiffs turned to Trevor Heck who claims to have visited numerous ATMs operated by First Bank "[i]n connection with an investigation in support of Plaintiffs' claims in this case." (Docket No. 45-1 at1). In his declaration (which is the subject of three separate Motions to Strike discussed below), Mr. Heck asserts that he and Ms. Welchly visited FirstBank's Fairview ATM on January 26, 2013, and found that the audio guidance feature failed consistently. More than a year later, on January 31, 2014, Mr. Heck claims he visited FirstBank's ATM located at 2808 Smith Springs Road in Nashville and found that

2

the audio guidance feature was not functioning for this machine, even though he removed and inserted his headphones three separate times to determine if the audio was intermittent. That same day he visited FirstBank's ATM at 3310 Aspen Grove Drive in Franklin and found that there were no Braille instructions for initiating the speech mode. Finally, Mr. Heck asserts that, also on January 31, 2014, he found that FirstBank's ATMs located at 11 Channing Way and at 1581 S. Highland Avenue in Jackson, and its ATM at 885 Conference Drive in Goodlettsville, did not have correct tactile function buttons.

In support of its Motion for Summary Judgment, FirstBank has set forth numerous facts which, for the most part, Plaintiffs do not dispute or claim that they are without sufficient knowledge to form a belief as to the accuracy of the fact asserted. Those facts show the following.

In July 2011, First Bank determined that many of its ATMs did not comply with the 2010 Standards that were set to become effective on March 15, 2012. Accordingly, First Bank along with its ATM vendors, including Diebold, NCR, and Bancsource, Inc., developed a plan to ensure that all of FirstBank's ATMs would comply with the 2010 Standards. Among other things, the plan called for FirstBank to either have the vendors upgrade machines, or to trade in non-upgradeable machines, and to add Braille instructions to other ATMs. Since the 2010 Standards were published in the Federal Register on September 15, 2010, FirstBank has only purchased and installed ATMs which adhere to those standards; that is, ATMs that are voice-guidance enabled and have audio jacks and Braille instructions.

FirstBank upgraded the Conference Drive Diebold ATM – the one Ms. Summers claims to have used – on March 13, 2012. A day later, First Bank upgraded the Fairview Boulevard Diebold ATM that Ms. Welchly claims to have used. Those upgrades were consistent with FirstBank's plan,

3

a plan that was formulated prior to either Plaintiff's use of the ATM.

FirstBank completed its ADA compliance plan on September 6, 2012, spending $663,000 in the process. It claims that the upgraded ATMs as well as the new ATMs manufactured by NCR, Diebold and Triton installed at some locations are all compliant with the 2010 Standards. Specifically, FirstBank maintains that the ATMs are (i) voice-guidance enabled as required by Section 707.5; (ii) have tactilely discernible function controls as defined by 707.6; (iii) have function keys with specific tactile symbols as required by Section 707.6.3.2; and (iv) have Braille instructions for initiating the voice-guidance mode at the ATMs as required by Section 707.8.

FirstBank concedes that ATMs, like all electronic and mechanical devices, require continual checks and maintenance to prevent and to remedy any breakdowns. Towards that end, Scott R. Smith, FirstBank's Vice President Electronic Banking, and Chastity Burns, First Bank's ATM and Point of Sale Administrator, oversee compliance of the bank's ATMs with the ADA and the 2010 Standards.

FirstBank has also developed a written policy that requires personnel at each of its branches to inspect its ATMs monthly to verify that the ATMs Braille instructions are in place, and check that the voice-guidance mode is working. Employees complete a checklist, verifying compliance, or noting any discrepancy, and scan it to Ms. Burns, who, in turn, reports any ADA compliance issues to Mr. Smith. According to FirstBank, the two then ensure that any issues – such as missing Braille instructions, malfunctioning voice-guidance software or vandalized audio jacks – are fixed or replaced.

On January 31, 2014, the same day that Mr. Heck tried to use it, FirstBank learned that the voice-guidance feature on its Smith Springs Road ATM was not functioning properly. Within one

hour of the discovery, FirstBank made a service call to have the malfunction repaired and the repair was made on February 3, 2014, one business day later. Also in January 2014, FirstBank learned that the Braille notice was missing from its Cool Springs ATM, and overnighted a sticker to the branch, which then placed it on the machine.

In their Complaint, "Plaintiffs invoke their statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees." (Docket No. 1, Complaint ¶ 68). They seek:

> a. Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above (specifically including Section 707 of the 2010 Standards); [and]
>
> b. A permanent injunction which directs Defendant to take all steps necessary to bring its ATMs into full compliance with the requirements set forth in the ADA, and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its ATMs are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law.

(Id. Prayer for Relief ¶¶ a & b).

## II. MOTIONS TO STRIKE

As indicated, FirstBank has filed three Motions to Strike Mr. Hecks declaration. In the first, it moves to strike the declaration pursuant to Fed. R. Civ. P. 37 because it was not served with a request under Fed. R. Civ. P. 26(b) to permit entry on its land as required by Fed. R. Civ. P. 34(a)(2). In response, Plaintiffs argue that such a request was unnecessary inasmuch as the ATMs that Mr. Heck visited were in public places and accessible to all. FirstBank next moves to strike the declaration for the alleged violation of Fed. R. Evid. 702; Fed. R. Civ. P. Civ. P. 26(a)(2)(B) and 56(c)(4); and L.R. 39.01(c)(6)(d) because Mr. Heck was not designated an expert witness and no expert report from him has been tendered. In response, Plaintiffs assert that they offer Mr. Heck not

5

as an expert but as a lay witness who is entitled to opine about his observations when he tried to use various ATMs. Finally, FirstBank moves to strike the declaration because Mr. Heck's proffered testimony is, for the most part, irrelevant within the meaning of Fed. R. Evidence 402 because he describes the alleged inoperability of ATMs which Plaintiffs have never claimed to have attempted to use and, while this is putatively a class action, Plaintiffs have never moved to certify a class.

Although First Bank raises some interesting arguments, not the least of which is that Mr. Heck purports to be a lay witnesses but claims to have "inspected th[e] ATMs to determine their compliance with Chapter 7 or the 2010 ADA Standards for Accessible Design" – going so far as to identify the specific sections found in the Standards and what he was looking for in relation thereto – the Court finds it unnecessary to strike his declaration. This is because, even with Mr. Heck's lay testimony, Plaintiffs have failed to carry their burden of establishing that this Court has jurisdiction.

### III. MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT

#### A. Standards of Review

##### 1. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may raise as a defense the lack of subject matter jurisdiction. Such a defense "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 2014 WL 1978242, at *6 (6th Cir. May 16, 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). Where, as here, the defendant raises a factual attack that "challenges the factual existence of subject matter jurisdiction . . . a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect

of that evidence on the court's authority to hear the case." Id.

"The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) "When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists." Lewis v. Whirlpool Corp., 630 F.3d 484, 487 (6th Cir. 2011).

### 2. *Motion for Summary Judgment*

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Discussion

FirstBank moves to dismiss or for summary judgment arguing that this Court lacks subject matter jurisdiction because in March 2012 it retrofitted the two ATMs that Plaintiffs allegedly tried to use to make them adhere to the 2010 Standards. Moreover, although Plaintiffs have not moved for class certification, to the extent they complain about FirstBank ATMs they have never used, Defendant contends that the undisputed evidence shows that FirstBank has completed its efforts, begun in July 2011 before the 2010 Standards went into to effect, to make all of its ATMs compliant

with the 2010 Standards. Thus, there is nothing for the Court to declare or enjoin and no live case or controversy so as to support Article III jurisdiction. Regardless of the standard employed, the Court agrees that this case is now moot.

The Court's power to adjudicate is limited to "cases and controversies" under Article III. U.S. Const., art. III, § 2, cl. 1. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The Supreme Court has defined standing generally as "the question of . . . whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Thus, "[t]o satisfy Article Ill's standing requirements, a plaintiff must show: (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 523–24 (6th Cir.2001). Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S. at 560.

Standing to sue is determined "as of the time the complaint is filed." Cleveland Branch, 263 F.3d at 524. However, even if a plaintiff has standing to bring a suit, the suit may be dismissed at any time for "mootness." This concept has been describe by the Supreme Court as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" Arizonans for Official English v. Arizona, 520 U.S. 43, 67, n.22 (1997) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)).

"Mootness occurs 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Midwest Media Property, L.L.C. v. Symmes Tp., Ohio, 503 F.3d 456, 460 (6th Cir. 2007) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). Therefore, "'[e]ven when an action presents a live case or controversy at the time of filing, subsequent developments . . . may moot the case.'" Id. at 461 (quoting Hall v. Beals, 396 U.S. 45, 48 (1969)). "'The mootness inquiry must be made at every stage of a case,'" and "[i]n analyzing issues of mootness it is helpful to keep in mind that '[t]hese problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case.'" Gottfried v. Medical Planning Services, Inc., 280 F.3d 684, 691 (6th Cir. 2002) (quoting McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 458 (6th Cir. 1997)).

FirstBank argues this case is moot because it undertook efforts, at considerable expense, to ensure that each of its ATMs comply with the ADA and the 2010 Standards. It also claims to be committed to ensuring that the ATMs remain compliant and has formulated a plan and designated individuals to ensure that any problems limiting access to the visually impaired are promptly addressed and corrected.

As a general rule, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc., 528 U.S. 167, 189 (2000)). " Rather, voluntary conduct moots a case only in the rare instance where 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 473 (6th Cir. 2008) (quoting Akers v. McGinnis, 352 F.3d 1030, 1035 (6th Cir. 2003). "What

9

is more, the party asserting mootness bears the 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again." Id.

Notwithstanding the heavy burden placed on a defendant, courts have dismissed ATM accessibility cases on mootness grounds where the defendant has established that it corrected perceived problems and implemented plans to insure future compliance with the ADA and the 2010 Standards. For example, in Scott v. Cash to Go, Inc., 2013 WL 1786640 (M.D. Fla. April 26, 2013), plaintiff, a blind individual, brought a class action complaint for declaratory and injunctive relief, asserting that defendant's ATM did not meet the 2010 Standards. After replacing the subject ATM with an ADA compliant one, defendant moved to dismiss arguing that the court lacked subject matter jurisdiction because there no longer was a case or controversy.

"[C]onvinced that the challenged conduct cannot reasonably be expected to recur," id. at *2, the Scott court agreed that dismissal was appropriate. In so ruling, the court, among other things, noted:

> First, the Court finds that the non-compliance of the subject ATM was an isolated incident. The subject ATM was replaced with an ADA-compliant one and all of Defendant's ATMs have been updated or replaced to comply with ADA requirements. . . . Because Defendant updated every one of its ATMs, the challenged conduct does not constitute a "continuing practice." . . . Nor is Defendant likely to spend money to replace its current, compliant ATMs with non-compliant ones after completing the time-consuming and expensive project of updating them all.
>
> Second, the Court finds that Defendant's cessation was motivated by a genuine commitment to compliance rather than a desire to avoid liability. Plaintiff encountered the subject ATM and brought suit in January 2013. . . . At that time, Defendant had already begun a program of ensuring that its ATMs were ADA-compliant. Specifically, in 2012, Defendant hired an outside contractor "for the purpose of inspecting the roughly 300 ATMs owned by [Defendant], [and] confirming that they complied with ADA standards[.]" Defendant was thus already working towards updating its ATMs before the instant action was initiated. Even if the subject ATM was not replaced until after Plaintiff brought suit, the Court is satisfied that because Defendant had already begun making changes to its ATMs at

>the macro-level of its business, its voluntary cessation was not solely motivated by a desire to avoid liability but was in line with a pre-existing genuine intention.

Id. (footnote and internal citations omitted).

More recently, in Welchly v. Cadence Bank, Inc., 2014 WL 271629 (M.D. Tenn. Jan. 23, 2014) – another of the handful of ATM cases brought by Ms. Welchly in this District – Judge Trauger dismissed Plaintiff's Class Action Complaint on mootness grounds. There, Ms. Welchely alleged that an ATM she attempted to utilize at the Franklin branch of Cadence Bank violated the ADA because it did not have (1) a voice guidance feature, (2) Braille instructions for initiating speech mode, and (3) proper tactile symbols.

Acknowledging that "[t]he party asserting mootness bears a 'heavy burden of persuading the court that the challenged conduct can not reasonably be expected to stand up again,'" Judge Trauger also observed that "[c]ourts have dismissed cases as moot at any stage in the litigation in which the defendant has demonstrated that the ADA violations have been fully remedied." Id. at *2 (quoting Youngstown Publ'g Co. v. McKelvey, 189 F. App'x 402, 505 (6th Cir. 2006)). Dismissal of the case before her, Judge Trauger reasoned, was appropriate in light of a declaration from Cadence's Senior Vice President of EFT and ATM operations, the accuracy of which Plaintiff did not challenge:

> The Limbaugh Declaration states that Cadence has successfully remedied all of the ADA violations alleged by Welchly in her Complaint at the Franklin ATM. Moreover, Limbaugh submits that all of Cadence's 98 ATMs in operation have been updated or replaced to comply with the 2010 Standards. Limbaugh further states that Cadence has implemented a stringent policy of compliance with the ADA, including monthly tests of each ATM by branch employees and mandatory reporting of test results to Limbaugh's office. Finally, Limbaugh explains that Cadence's efforts at compliance began in July 2011, when it requested that its vendors perform an audit of Cadence's operating ATMs to check for compliance. According to Limbaugh, Cadence's compliance plan was complete as of September 2013. Limbaugh notes that, due to high demand for newly manufactured ADA-compliant ATMs and the

limited number of vendors specializing in the installation of ATMs, the process of updating and replacing non-compliant ATMs owned by Cadence (and by other ATM operators) was delayed.

Id. at *2. Given "Cadence's clear evidence of compliance," Judge Trauger rejected Plaintiff's request that the court "'retain jurisdiction for a period of time to be determined to ensure that the Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law,'" finding "that such continued oversight is unnecessary." Id. (citation omitted).

Just as in Scott and Welchly, the Court finds that there no longer exists a live case or controversy, and that this case should therefore be dismissed on mootness grounds. Plaintiffs either do not dispute, or have provided no evidence to dispute, that FirstBank (1) implemented its ADA compliance policy prior to the effective date of the 2010 Standards; (2) upgraded its older ATMs (including the two attempted to be used by Plaintiffs) prior to the effective date of the 2010 Standards; (3) has only purchased ATMs that comply with the 2010 Standards since those standards were first published; (4) spent $663,000 dollars to ensure that its ATMs were all ADA compliant; (5) has a written policy that requires monthly checks and the completion of a checklist for each ATM regarding ADA compliance; (6) delegated responsibility to specific corporate officers to ensure compliance with the ADA and the correction of problems with its ATMs; and (7) has detected and resolved problems that were discovered as a result of its compliance plan. Given the time, money, and effort FirstBank has devoted to complying with the requirements of the ADA and the 2010 Standards, it is highly unlikely that it will not continue to ensure its ATMs remain in compliance.

Plaintiffs argue that FirstBank's professed intention to comply with the ADA should not be

taken at face value in light of Mr. Heck's investigation. The Court is of the opinion, however, that the results of the investigation actually shows that FirstBank's policy works, and that it is committed to making FirstBank ATMs accessible to the blind.

Mr. Heck claims that the audio guidance feature at the Smith Springs Road ATM was not functioning on January 31, 2014. However, it is undisputed that, without notice of Mr. Heck's visit or declaration, FirstBank discovered the same malfunction on the same day, and repaired it the next business day. Mr. Heck also claims there were no Braille instructions for initiating the speech mode at the Aspen Grove ATM on January 31, 2013. Again, however, without knowledge of Mr. Heck's inspection, FirstBank, through it Branch Manager Terry Smith, discovered that the Braille placard was missing who reported the matter to Ms. Burns, and who affixed the sticker after it was overnighted to the branch by Ms. Burns. These incidents suggest that FirstBank was cognizant that problems could occur and sought to remedy those problems promptly.

The regulations recognize that breakdowns and malfunctions may occur. See 28 C.F.R. § 36.211(b) (the public accommodation provisions of the ADA "do[] not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs"). And courts recognize that companies must be given a reasonable opportunity to address such intermittent problems . See Foley v. City of Lafayette, 359 F.3d 925, 930 (7th Cir. 2004) (noting that under ADA regulations governing transportation services "occasional . . . malfunctions, unaccompanied by systemic problems of poor maintenance policy or frequent denials of access, do not constitute violations"); Thill v. Olmstead Cnty., 2010 WL 3385234, at *6 (D. Minn. Aug. 24, 2010) (quoting the Department of Justice ADA Technical Assistance Manual for the proposition that "[t]he ADA does not require covered entities to do the impossible. In particular, it does not punish covered entities

for occasional and inevitable breakdowns in handicapped-accessible features. . .").

That leaves the three ATMs with alleged problems relating to the input keys. According to Mr. Heck's declaration, those ATMs did "not have the correct tactile symbols." (Docket No. 45-1, Heck Decl. ¶¶ 7-9). What constitutes the "correct tactile symbols" is not explained in the declaration, although Mr. Hecks does reference Section 706.6 of the 2010 Standards. How Mr. Heck, as a layperson, would know of these standards and their requirements is also not explained in the declaration. In his deposition, Mr. Heck testified that he had not even read the 2010 Standards, or the applicable Code of Federal Regulations regarding public accommodations for the disabled, but maintained that the ADA requires that the Clear key have a "sideways V" tactile symbol. (Docket No. 36-1, Heck Depo. at 27-28).

FirstBank acknowledges that Section 707.6.3.2 of the 2010 Standards (Input / Function Keys / Tactile Symbols) requires that an ATM's Clear key have the tactile symbol of a raised left arrow, that is, a "<" tactile symbol. It points out, however, that the 2010 Standards contain a safe harbor provision that provides:

> Elements that have not been altered in existing facilities on or after March 15, 2012 and that comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards are not required to be modified in order to comply with the requirements set forth in the 2010 Standards.

28 C.F.R. § 36.304(d)(2). FirstBank's position is that the safe harbor provision grandfathered older keypads with different tactile symbols (namely, raised vertical bars "|" instead of a raised "<") because the keypads are structural in nature and complied with the 1991 Standards, a position which was endorsed by John Wodatch, the Chief of the Disability Rights Section of the Department of Justice during a public hearing on proposed rulemaking on December 16, 2010. (Docket No. 58 at 6 n.7) (citing Transcript of Public Hearing on Advance Notices of Proposed Rulemaking, available

14

at http://www.ada.gov/anprm2010/DC_hearing_transcript.htm). Plaintiffs have not challenged FirstBank' understanding of the safe harbor's provision. Moreover, FirstBank claims to have since "replaced its older, grandfathered ATM keypads so that they all have the requisite tactile symbol for the Clear key," (id.), a point which Plaintiffs also do not challenge.

Plaintiffs bring their Complaint for injunctive relief under Title III of the ADA which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods and services, facilities, privileges, advantages, or accommodations of any place of public accommodation," 42 U.S.C. § 12182(a), and defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services," id. § 12182(b)(2)(A)(iii). To obtain injunctive relief, Plaintiffs must be "likely to suffer future injury," City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983); "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[,]" O'Shea v. Littleton, 414 U.S. 488, 495 (1974). Because the record demonstrates that FirstBank made a good-faith effort to comply with the ADA and the 2010 Standards, is now in compliance, and has taken concrete steps to ensure future compliance, the Court finds there is no longer a live case or controversy and this case is moot.

In so ruling, the Court has considered Plaintiff's Notice of Supplemental Authority (Docket No. 48), which cites the recent decision in Sawczyn v. BMO Harris Bank Nat'l Assoc., 2014 WL 1089790 (D. Minn. March 19, 2014). That case, however, is inapposite. While the court found that the case was not moot, it did so because the bank had not established that its ATMs were ADA compliant, the record suggested that alleged violations may have gone unnoticed and unrepaired for

15

18 months, and the bank did not establish the existence of a written corporate policy or show how often it tested its ATMs for ADA compliance. The deficiencies in the record identified in <u>Sawczyn</u> (which was decided on a Motion to Dismiss before discovery was taken) are simply not present here.

## IV. **CONCLUSION**

On the basis of the foregoing, the Court will grant FirstBank's Motions to Dismiss and for Summary Judgment and dismiss this case.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE